UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CSW, INC.,

       Plaintiff,

v.                                                Case No. 17-C-1007

NORTHERN CONCRETE CONSTRUCTION, LLC,

       Defendant.

**ORDER DENYING DEFENDANT'S PARTIAL MOTION
FOR SUMMARY JUDGMENT AND GRANTING
PLAINTIFF'S MOTION TO COMPEL**

Plaintiff CSW, Inc., commenced this action in the Circuit Court for Jackson, Mississippi against Defendant Northern Concrete Construction, LLC. (Northern), asserting claims for breach of contract, unjust enrichment, *quantum meruit*, and violation of Miss. Code Ann. § 11-53-81. CSW is a Mississippi corporation that provides staffing for concrete construction. Northern is a limited liability company based in Wisconsin that does concrete construction. CSW claims that Northern failed to pay CSW amounts owed for CSW employees who worked on Northern projects in Wisconsin. Asserting federal diversity jurisdiction under 28 U.S.C. § 1332, Northern removed the case to the United States District Court for the Southern District of Mississippi and that court granted Northern's motion for change of venue where a related case under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, by CSW workers against Northern was pending. The parties settled the FLSA case, and this case is now before the court on Northern's motion for partial summary judgment. Northern seeks a determination that Wisconsin law applies, thus entitling it to dismissal of CSW's claims for actual attorneys' fees and enhanced pre-judgment interest on its

Mississippi state law claim. Also pending before the court is CSW's motion to compel, which was partially resolved in an earlier hearing. ECF No. 47. In what remains of the motions, CSW seeks an order compelling Northern to produce all communications between it and CSW. For the reasons that follow, Northern's motion for summary judgment will be denied and CSW's motion to compel will be granted.

**BACKGROUND**

As an initial matter, Northern, citing Local Rule 56(b)(2)(B)(ii), argues that "[b]ecause CSW has failed to provide proposed findings of fact as required by local rule, its claims should be disregarded as unsupported, while Northern Concrete's should be adopted as undisputed." Def.'s Reply, ECF No. 55 at 2. Local Rule 56(b)(2)(B)(ii)'s requirement, however, only applies if a party wishes to state "any additional facts that require the denial of summary judgment." Here, CSW opted to file no additional proposed findings of fact, instead setting forth its objections to Northern's proposed findings of fact in the manner prescribed by Local Rule 56(b)(2)(B)(i)—reproducing "each numbered paragraph in the moving party's statement of facts followed by a response to each paragraph, including, in the case of any disagreement, specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon." As a result, Northern's proposed findings of fact will not be adopted as undisputed. What follows are the facts of the case set forth in a light most favorable to CSW as the nonmoving party.

In September of 2015, CSW emailed Northern a proposal to provide temporary personnel to Northern to perform work in Wisconsin. Among the terms in the proposal was a Mississippi choice-of-law provision. Upon receipt of CSW's proposal, Northern contacted CSW and negotiated a different per diem payment for the temporary workers CSW agreed to provide. Other than the per

diem, CSW contends that Northern agreed to all of the remaining terms of the proposal. CSW's written proposal did not include a signature line and was never signed by either party. Shortly thereafter, CSW began providing temporary workers to Northern.

Soon after the initial period of work concluded around January 15, 2016, CSW emailed Northern another proposal. The 2016 proposal also included a Mississippi choice-of-law provision, but differed in several other respects. The 2016 proposal contained signature lines, a different pay rate, performance and time guarantees, and included a per diem for days worked as well as for days not worked. CSW contends that Northern accepted all of the terms of the 2016 proposal except the per diem. Although Northern began using CSW workers again in April of 2016, the 2016 proposal was also never signed.

## LEGAL STANDARD

Summary judgment is appropriate when the movant shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and make all reasonable inferences that favor them in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that

3

party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

**ANALYSIS**

Northern's motion for summary judgment seeks a determination by the court that Wisconsin law and not Mississippi law governs the dispute between the parties. Under the forum state's choice-of-law rules, which the court applies to determine which state's law governs the dispute, *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 383 (7th Cir. 2003), Northern argues that Wisconsin law clearly applies. CSW argues, however, that the parties agreed that any dispute arising under their contract would be resolved under the law of the State of Mississippi. Wisconsin courts have long held that "parties are free to choose the law governing their contracts." *Am. Fam. Mut. Ins. Co. v. Cintas Corp. No. 2*, 2018 WI 81, ¶ 13, 383 Wis. 2d 63, 914 N.W.2d 76 (citing *Jefferis v. Austin*, 182 Wis. 203, 205, 196 N.W. 238 (1923) ("That parties to a contract may expressly or impliedly agree that the law of a jurisdiction . . . shall control is beyond question.")). The question before the court is therefore whether the parties reached such an agreement in this case. CSW contends that the parties did reach such an agreement and that Northern is judicially estopped from arguing to the contrary. It is to the latter issue that the court turns to first.

**A.  Judicial Estoppel**

In its partial motion for summary judgment, Northern asserts that it never orally agreed to the Mississippi choice-of-law provision contained in the proposals and that the written proposals are not enforceable contracts. CSW argues that Northern is judicially estopped from asserting that the written proposals are not enforceable contracts because Northern's stance is inconsistent with Northern's earlier position in the cross-claims it brought against CSW in the FLSA case, *Morgan*

4

*et al. v. CSW et al.*, 1:16-cv-01283-WCG, where CSW asserts that Northern portrayed the proposals as an agreement between the parties.

"The doctrine of judicial estoppel prevents a party from prevailing on an argument in an earlier matter and then relying on a contradictory argument to prevail in a subsequent matter." *Wells v. Coker*, 707 F.3d 756, 760 (7th Cir. 2013).

> In determining whether a party is judicially estopped from raising an argument, we examine three factors: (i) whether the party's positions in the two litigations are clearly inconsistent; (ii) whether the party successfully persuaded a court to accept its earlier position; and (iii) whether the party would derive an unfair advantage if not judicially estopped.

*Id.* (citing *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001)).

Regarding the first factor, Northern's earlier position is not clearly inconsistent with its current position because the majority of Northern's cross-claims against CSW did not portray the proposals to be enforceable contracts. Although Northern did bring a breach of contract claim, its other claims—breach of implied contract, intentional misrepresentation, fraud in the inducement, negligent misrepresentation, and breach of fiduciary duty—were not based on the existence of an enforceable contract. These seemingly inconsistent claims were asserted in a counterclaim, a pleading in which a party is allowed to present alternative claims and "may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(2). This factor weighs against holding that Northern is judicially estopped from arguing its current position.

More importantly, Northern never successfully persuaded this court that the proposals were a contract because its counter-claims were resolved via default judgment. The underlying merits of Northern's claims were not discussed. Judicial estoppel is appropriate when "judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or

5

the second court was misled.'" *New Hampshire*, 532 U.S. at 750 (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982)). "The offense is not taking inconsistent positions so much as it is winning, twice, on the basis of incompatible positions." *Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp.*, 910 F.2d 1540, 1548 (7th Cir. 1990). A default judgment was granted in the FLSA case because CSW failed to secure counsel and failed to timely answer Northern's cross-claims. *Morgan et al. v. CSW et al.*, 1:16-cv-01283-WCG, ECF No. 83 at 4. As a result, the court never addressed whether the proposals were a contract. Under theses circumstances, Northern's current position does not confer on it an unfair advantage, and it is not judicially estopped from asserting that the written proposals are not enforceable contracts.

**B.    Mississippi Choice-of-Law Provision**

Although Northern argues that it never agreed to the Mississippi choice-of-law provision contained in both of CSW's proposals, either orally or in writing, the facts surrounding the formation and specific terms of the oral contract between Northern and CSW are in dispute, rendering summary judgment inappropriate.

Northern points to the declaration of Elise Opicka—Northern's Director of Human Resources—where she stated that "[w]hen orally agreeing to terms in 2015 and 2016 at no time did Northern Concrete discuss or agree to a choice of law statement selecting Mississippi law." Opicka Decl., ECF No. 46 at ¶ 7. CSW contends, however, that Opicka was not a party to the negotiations. According to CSW, the negotiations were conducted by phone and email. CSW relies on the deposition testimony of Brad Lott, one of the two owners of CSW, that all of the terms of the proposals except for the per diem rates were discussed and agreed upon by the parties. Lott testified as follows:

> Q: Was this proposal from Northern Concrete and CSW ever signed?
>
> A: No
>
> . . .
>
> A: It was agreed to in phone conversations.
>
> Q: Were any of the terms contained in the proposal changed, except for the per diem rates?
>
> A: No.

Lott Dep., ECF No. 45-1 at 18:16–19:2.

> Q: [D]id you present this to Northern Concrete through email or in person or through regular mail?
>
> A: Email.
>
> Q: Email. And then you discussed the terms in person at some point?
> . . .
> A: All right. We started in either July or August of 2015. Everything on here was discussed via telephone. Okay. At the end of the year – we sent this to them in January asking, once again, for eighty-five dollars a day per diem to try to let us handle our own hotels.
> . . .
> A: But they worked this agreement 2015 and 2016.
> . . .
> Q: Okay. And, again, the only term on this first page that they didn't accept was the eighty-five dollars per day per diem?
>
> A: That's correct.

*Id.* at 106:14–108:20. Although Northern asserts that Lott's "deposition does not indicate discussion of choice of law," Pl.'s Reply, ECF No. 55 at 4, Lott stated that aside from changes to the per diem, the remaining terms of the agreement were discussed and agreed to orally. Because there is a material dispute over whether the Mississippi choice-of-law provision was orally agreed to by Northern, Northern is not entitled to summary judgment on the issue of choice of law.

It is also worth noting that even if the parties did not expressly discuss the choice-of-law provision, Northern may have implicitly agreed to it. CSW's proposals obviously constituted offers

7

that Northern was free to accept or reject. If when presented with CSW's proposals Northern objected to only the per diem, negotiated with CSW to arrive at a different per diem, and then both parties proceeded to perform under the contract, a court could conclude or a trier of fact could find that Northern assented to the remaining terms of the original offer to which it did not object by its conduct. *See, e.g.*, *Morris F. Fox & Co. v. Lisman*, 208 Wis. 1, 240 N.W. 809 (1932) ("The plaintiff signed this agreement, but on the stipulated 'understanding of course' that Lisman & Co. would procure class A rating. Signing the selling group contract in connection with this expressed stipulation did not constitute an acceptance by the plaintiff of Lisman & Co.'s offer, but the expressed stipulation constituted, as the trial court concluded, a counter offer by the plaintiff which Lisman & Co. had to accept before a contract would be created. Lisman & Co. did not themselves expressly accept this counter offer, but, as the opinion heretofore filed herein shows, acceptance may result from conduct as well as from express words."); *see also Dresser Indus., Inc. v. Gradall Co.*, 702 F.Supp. 726, 733 (E.D. Wis. 1988) (holding that changing or adding terms to offer constitutes counter-offer which may be accepted by conduct of original offeree). In any event, Northern is not entitled to summary judgment.

## C. CSW's Motion to Compel Production of Documents

In its motion to compel, CSW argues that if Northern's partial motion for summary judgment is denied that Northern should produce all communications between it and CSW. During discovery CSW had requested that Northern produce all communications between the two parties. Northern objected to the request and produced nothing in response, stating that CSW's request is "overbroad, irrelevant, unduly burdensome, unduly cumulative, not reasonably calculated to lead

8

to the discovery of admissible evidence, and requests [CSW's] own documents and documents already in [CSW's] possession." ECF No. 48-1 at 5–6.

Under the Federal Rules of Civil Procedure,

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

The requested communications are seemingly relevant to the issue of the existence and terms of the agreement between the parties and any changes that were made. As CSW points out, Northern claims that "[d]uring the course of the Northern Concrete/CSW relationship, CSW repeatedly altered or attempted to alter the terms of that relationship." Def's Motion for Summ. J., ECF No. 44 at 4. "By the end of the Northern Concrete/CSW relationship," Northern contends, "few—if any—of the terms initially orally proposed by CSW remained in force." *Id*. Given these allegations, CSW's request is not overbroad. The relationship between the two parties was focused solely on the work performed that is at issue in this case based on an agreement the details of which the parties dispute. While the request encompasses communications that may not involve negotiations or are written by employees who are not authorized to discuss or agree to terms, they are still relevant as they may provide context and illustrate the nature of the agreement through actions taken by the parties or show how it was modified through subsequent actions.

The scope and details of the agreement reached by the parties is central to the resolution of this case. Both parties are in agreement that all discussions and negotiations related to the proposals

were conducted either via email or telephone, and the parties' relationship only dates back to 2015. Moreover, Northern has failed to specify why production of the requested emails and communications would be unduly burdensome. Under these circumstances, CSW's motion to compel will be granted.

## CONCLUSION

For the foregoing reasons, Northern's partial motion for summary judgment (ECF No. 42) is **DENIED** and CSW's motion to compel (ECF No. 47) with respect to all communications between the parties is **GRANTED**. Northern is ordered to produce all communications between it and CSW within 30 days of the date of this order.

**SO ORDERED** this  17th  day of January, 2019.

s/ William C. Griesbach<br>
William C. Griesbach, Chief Judge<br>
United States District Court